**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ASJAD ALI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAGNER SPRAY TECH CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Asjad Ali ("Plaintiff") individually, and on behalf of all others similarly situated, by and through undersigned counsel, brings this action against Defendant Wagner Spray Tech Corporation ("Defendant" or "Wagner"), and upon information and belief and investigation of counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1.      Wagner designs, manufacturers, markets, and sells a line of Wagner® 900 Series Steam Cleaners[1] that are defective and unreasonably dangerous, posing a serious burn hazard to consumers.[2] The Products contain a defect that causes the hose to overheat and the nozzle or spray gun to unpredictably expel dangerously hot water during and after use.

2.      This defect manifests during ordinary, intended use of the Products and can cause hot water to discharge without warning, including after the trigger is engaged, creating a significant risk of burns.

---

[1] The "Products" at issue are the Wagner® 925e Steam Machine Elite Steamer, 915E On-Demand Steamer, and 905e Auto Steamer.
[2] *See* https://www.cpsc.gov/Recalls/2026/Wagner-Spray-Tech-Recalls-900-Series-Power-Steamers-Due-to-Burn-Hazard; https://www.wagnerspraytech.com/900-series-recall/

3. Despite knowledge of this defect, including numerous incident reports and consumer injuries, Wagner continued to manufacture, market, and sell the Products for years without disclosing the safety risk to consumers.

4. Wagner has now issued a recall only after widespread consumer complaints and injuries and in coordination with the U.S. Consumer Product Safety Commission ("CPSC"). However, the recall is inadequate. Rather than offering refunds or replacements, Wagner provides only a burdensome and ineffective "repair kit" that requires consumers to wait weeks for delivery and install protective components themselves.

5. The recall does not correct the underlying defect, does not compensate consumers, and leaves defective products in consumers' possession and in the marketplace. As a result, consumers are left with products that are unsafe, unusable, and worth substantially less than represented.

6. Plaintiff brings this action violations of the Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., breach of express and implied warranties, and unjust enrichment on behalf of an Illinois class seeking a full refund or, at minimum, damages reflecting the difference between the value paid and the value received.

## **PARTIES**

7. Plaintiff is an individual who, at all relevant times, resided in DuPage County, Illinois. On or about July 6, 2024, Plaintiff purchased a Wagner Model 905e Auto Steamer (the "Product") from an online retailer.

8. Plaintiff used the Product as intended and in accordance with Wagner's instructions. During normal use, the Product unexpectedly expelled hot water, which contacted Plaintiff's skin and caused a burn.

9.      Plaintiff's injury was caused by the Product's known and undisclosed defect, which causes the hose and nozzle assembly to overheat and discharge hot water unpredictably, including during and after operation, creating a serious burn hazard.

10.      Had Plaintiff known of the defect, he would not have purchased the Product or would have paid significantly less for it.

11.      Wagner is a Minnesota corporation with its principal place of business in Minnesota.

12.      Wagner holds itself out as a leading manufacturer of innovative, high-quality tools and a trusted name among homeowners and professionals, emphasizing its decades of experience in the industry. Wagner further represents that it develops reliable, user-friendly products and provides "exceptional product support" through knowledgeable professionals.[3] Through these representations, Wagner conveys that its Products are safe, dependable, and suitable for consumer use.

## **JURISDICTION AND VENUE**

13.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs (see retail sales allegations below); and (3) there is diversity because at least one class member and Defendant are citizens of different states.

14.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

---

[3] https://www.wagnerspraytech.com/about-us/

3

15. This Court has personal jurisdiction over Defendant because Defendant has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the privilege of conducting business in this state by selling the Products in this state.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District.

### ADDITIONAL FACTS COMMON TO ALL COUNTS

17. On March 19, 2026, Wagner issued a recall for the Products.[4] The recall included the 905e, 915e, and 925e models purchased from November 2018 to March 19, 2026.

18. The recall was issued only after numerous incident reports and injuries and in coordination with the CPSC.

19. There have been at least 156 reported incidents involving the Products, including reports of hoses overheating and the Products unexpectedly expelling hot water. These incidents include more than 50 reported burn injuries to consumers.

20. Despite this information, Wagner continued to sell the Products for years without disclosing the defect.

21. The Products were widely sold through major retailers, including Home Depot, Lowe's, Walmart, Target, HSN, QVC, Amazon.com, and Wagner's own website, for approximately $130 to $200.

22. The recall involves approximately 700,000 Products. Based on population data, there are approximately 30,000 recalled Products sold in Illinois amounting to approximately $3.9 to $6 million dollars.

---

[4] https://www.cpsc.gov/Recalls/2026/Wagner-Spray-Tech-Recalls-900-Series-Power-Steamers-Due-to-Burn-Hazard; https://www.wagnerspraytech.com/900-series-recall/

23. While the CPSC instructs consumers to "stop using" the recalled Products immediately due to the risk of burns, Wagner simultaneously instructs consumers to install a repair kit and continue using the Products. This conflicting guidance underscores the inadequacy and unreliability of the recall remedy.

24. The recall does not provide refunds or replacements. Instead, the "repair" consists only of external protective components designed to mitigate exposure to heat, rather than correcting the underlying defect that causes the hose to overheat and the nozzle to expel hot water. The recall merely provides a repair kit consisting of (1) a hose sleeve to protect against hose temperatures while using the steamer; (2) a handle cover to protect against handle/nozzle temperatures while using the steamer; and (3) a funnel to protect against overfilling the steamer.

25. These components do not correct the underlying defect in the Product's design or operation, but instead attempt only to mitigate exposure to heat.

26. Consumers must request the repair kit, wait approximately six to eight weeks for delivery, and install the components themselves before using the Product. During this period, consumers are left with a recalled and unusable Product, or must risk continued use of a dangerous Product.

27. The recall improperly shifts the burden of remedying a dangerous defect onto consumers and fails to remove defective products from circulation.

28. Thus, the recall is inadequate and fails to remedy the defect. The recall shifts the burden of repair to consumers, fails to compensate them for their losses, and leaves defective products in the marketplace.

29. A recall that does not provide refund or replacement for a dangerous product is inherently inadequate where the defect poses a risk of physical injury.

30. Wagner's own warranty provides that defective products may be repaired or replaced. However, in connection with the recall, Wagner provides neither repair by Wagner nor replacement, and does not offer refunds. This departure from Wagner's stated warranty remedies further demonstrates the inadequacy of the recall. Wagner warrants the Products as follows:

Models: 505e, 725, 905e, 915e & 925e On-Demand Steamers

This Product, Manufactured By Wagner Spray Tech Corporation, is warranted to the original retail purchaser against defects in material and workmanship for one year from the date of delivery if operated in accordance with Wagner's printed recommendation and instructions. This warranty does not cover damage resulting from improper use, accidents, user's negligence or normal wear. This warranty does not cover any defects or damages caused by service or repair performed by anyone other than a Wagner Authorized Service Center.

Any implied warranty of merchantability or fitness for a particular purpose is limited to one year following date of delivery. Wagner shall not in any event be liable for any incidental or consequential damages of any kind, whether for breach of this warranty or any other reason. This warranty does not apply to accessories.
This product is designed for home usage only. If used for commercial or rental purposes, this warranty applies only for 30 days from the date of delivery.
If any product is defective in material and workmanship during the applicable warranty period, please contact Wagner Product Support at 1-800-328-8251 to discuss options for warranty coverage. Warranty and support options may involve troubleshooting, repair, or replacement of the product in question.[5]

31. Wagner expressly warranted that the Products would be free from defects in materials and workmanship when operated in accordance with its instructions. Plaintiff used the Products as intended and in accordance with those instructions. The Products nevertheless malfunctioned and expelled hot water, demonstrating that it was defective and unfit for its ordinary purpose.

32. Wagner's own warranty contemplates that defective products may require repair or replacement. However, in connection with the recall, Wagner provides neither replacement nor

---

[5] *See* https://www.wagnerspraytech.com/warranty/

refund, instead offering only a consumer-installed modification kit. This departure from its own stated warranty remedies underscores the inadequacy of the recall.

33.     As a result of Wagner's conduct, Plaintiff and Class Members have suffered economic injury, including paying for products that are defective, unsafe, and worth less than represented.

## CLASS ALLEGATIONS

34.     Plaintiff brings this action on behalf of himself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within Illinois who purchased the Products within five
> years prior to the filing of the original Complaint through the date
> of class certification.

35.     Defendant, its employees and agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

36.     The Class is so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class includes—at minimum—hundreds of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant and third-party retailers.

37.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of the members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

38.     There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a.  Whether the Products contain a defect that causes the hose to overheat and the nozzle or spray gun to expel hot water unpredictably;

b.  Whether Defendant knew or should have known of the defect prior to issuing the recall;

c.  Whether Defendant failed to disclose the defect to consumers at or before the time of sale;

d.  Whether the defect constitutes a material safety hazard;

e.  Whether Defendant's conduct, including its omissions and recall remedy, was unfair or deceptive under the Illinois Consumer Fraud and Deceptive Business Practices Act;

f.  Whether Defendant's recall is inadequate because it fails to provide refunds or replacements and instead requires consumers to perform a self-install repair that does not correct the underlying defect;

g.  Whether Plaintiff and Class Members suffered ascertainable losses, including overpayment or diminished value;

h.  Whether Defendant was unjustly enriched as a result of the conduct alleged herein;

i.  Whether the statute of limitations should be tolled due to Defendant's concealment of the defect; and

j.  Whether Plaintiff and Class Members are entitled to damages, restitution, injunctive relief, attorneys' fees, and costs.

39. As a resident of Illinois who purchased the Product, Plaintiff is asserting claims that are typical of the Class.

40. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

42. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable.

43. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues.

44. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

45. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

46.     Plaintiff's claims and injuries are identical to the claims and injuries of all class members, because all claims and injuries of all class members are based on the same conduct and the same legal theory. All allegations arise from the defect and inadequate recall.

47.     Additionally or in the alternative, Defendant has acted or refused to act in respect generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

48.     Defendant failed to comply with the requirements of the law as to the Class with respect to the above-alleged transactions.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

49.     Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

50.     Plaintiff brings this count individually and on behalf of the Class.

51.     Plaintiff is a "person" as defined in 815 ILCS 505/1(c).

52.     Plaintiff is a "consumer" as defined in 815 ILCS 505/1(e), as he purchased the Product "not for resale in the ordinary course of his trade or business but for his use or that of a member of his household."

53.     Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a corporation engaged in trade or commerce.

54.     815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any

practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

55.     Defendant engaged in deceptive acts and practices by uniformly failing to disclose the Product's defect to consumers at or before the time of sale.

56.     Defendant knew or should have known of the defect based on, *inter alia*, consumer complaints, incident reports, and the nature of the defect itself.

57.     Defendant had a duty to disclose the defect because it relates to a safety hazard, was known to Defendant, and was not known or reasonably discoverable by consumers.

58.     The defect is latent and manifests only during use, and therefore would not be discovered by reasonable consumers prior to purchase.

59.     The omitted defect is material because a reasonable consumer would consider the existence of a burn hazard important in deciding whether to purchase the Products or how much to pay for it.

60.     Defendant intended that consumers, including Plaintiff, rely on its omissions and the absence of any disclosure of the defect when purchasing the Product.

61.     Defendant also engaged in unfair acts and practices by selling Products with a known safety defect and failing to provide an adequate remedy.

62.     Defendant's conduct offends public policy, is immoral, unethical, oppressive, and unscrupulous, and causes substantial injury to consumers.

63.     Defendant's recall is inadequate and unfair because it: fails to provide refunds or replacements for a dangerous product; requires consumers to wait weeks for a repair kit; requires consumers to perform the repair themselves; does not correct the underlying defect; and leaves defective Products in consumers' possession and in the marketplace.

11

64. Defendant further engaged in unfair conduct by providing conflicting safety instructions, including directing consumers to continue using the Products after installing a repair kit while regulators instructed consumers to stop using the Products immediately due to burn risks.

65. As a direct and proximate result of Defendant's deceptive and unfair conduct, Plaintiff and Class Members suffered actual damages.

66. Had Defendant disclosed the defect, Plaintiff and Class Members would not have purchased the Products or would have paid significantly less for them.

67. Plaintiff and Class Members paid more for the Products than they were worth and received Products that were defective, unsafe, and unfit for their ordinary purpose.

68. Plaintiff also suffered physical injury as a result of the defect, further demonstrating the seriousness and materiality of the omitted defect.

69. By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, and awarding actual damages, punitive damages, costs, and attorneys' fees.

## COUNT II
## BREACH OF EXPRESS WARRANTY

70. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

71. Plaintiff brings this count individually and on behalf of the Class.

72. Defendant expressly warranted that the Products were free from defects in materials and workmanship and were safe and fit for their ordinary and intended use when operated in accordance with Defendant's instructions.

73. Defendant's express warranty formed part of the basis of the bargain between Defendant and Plaintiff and Class Members.

12

74. Defendant further represented, through its marketing, labeling, and uniform warranty, that the Products were reliable, user-friendly, and suitable for safe household use.

75. Plaintiff and Class Members reasonably relied on Defendant's express warranties and representations in purchasing the Products.

76. At the time of sale, the Products were not as warranted. Specifically, the Products contained a defect that causes the hose to overheat and the nozzle or spray gun to unpredictably expel dangerously hot water during and after use, posing a serious burn hazard.

77. This defect existed at the time the Products left Defendant's control.

78. Plaintiff used the Product as intended and in accordance with Defendant's instructions. Despite this, the Product malfunctioned and caused injury, demonstrating that it was not free from defects and was not safe for its ordinary purpose.

79. Defendant breached its express warranty by selling Products that were defective, unsafe, and not in conformity with its affirmations and promises.

80. Defendant had actual or constructive notice of the defect and resulting breach, including through consumer complaints, incident reports, and the subsequent recall.

81. Plaintiff provided or was not required to provide pre-suit notice to Defendant because Defendant had actual knowledge of the defect and breach through the recall and related reports.

82. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members suffered damages, including but not limited to overpayment for the Products, diminished value, and loss of use.

83. Defendant's warranty purports to limit remedies to repair or replacement. However, Defendant has failed to provide an adequate remedy, instead offering only a consumer-installed

repair kit that does not correct the underlying defect. Accordingly, any limitation of remedies fails of its essential purpose and is unenforceable.

84. Defendant's attempt to disclaim or limit liability for consequential damages is unconscionable and unenforceable where, as here, the Products contain a latent safety defect that poses a risk of personal injury.

85. As a result of Defendant's breach of express warranty, Plaintiff and Class Members are entitled to damages and other relief as permitted by law.

## COUNT III
## BREACH OF IMPLIED WARRANTY

86. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

87. Plaintiff brings this count individually and on behalf of the Class.

88. Section 2-314 of the Uniform Commercial Code, as codified in Illinois pursuant to 810 ILCS 5/1-101, *et seq.*, (the "UCC") states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

89. "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used." 810 ILCS 5/2-314(2)(c).

90. Defendant is and was, at all relevant times, a merchant with respect to the Products. The Products constitute a "good" under the UCC.

91. Plaintiff and Class members purchased the Products.

92. As the manufacturer and seller of the Products, Defendant impliedly warranted to Plaintiff and the Class that the Products were of merchantable quality and safe for their ordinary and intended use. In fact, the Products, when sold and at all times thereafter, were not merchantable and were not fit for their ordinary purpose. Specifically, as described above, the Products are

defective because they contain a design and/or manufacturing defect that causes the hose to overheat and the nozzle or spray gun to unpredictably expel dangerously hot water during and after use, posing a serious burn hazard to consumers.

93.     This defect renders the Products unsafe and unfit for their ordinary purpose of household steam cleaning, even when used as intended and in accordance with Defendant's instructions.

94.     Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the Products.

95.     Plaintiff provided Defendant with notice of this breach of warranty by mailing a notice letter prior to filing this Complaint. Alternatively, Defendant had actual knowledge of the defect and breach through, inter alia, consumer complaints, incident reports, and the recall.

96.     Defendant's breach directly and proximately caused Plaintiff and Class Members harm. Had Defendant not impliedly warranted that the Products were safe and fit for their ordinary purpose, Plaintiff and Class Members would not have purchased the Products or would have paid less for them.

97.     By marketing, advertising, and selling the Products, Defendant made implied promises and affirmations that the Products were safe, functional, and fit for ordinary use. These implied warranties formed part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

98.     Defendant breached the implied warranty of merchantability because the Products were not fit for the ordinary purposes for which such goods are used, and were not of fair average quality within the description of the Products.

99.     At the time of purchase, Plaintiff and Class Members did not know, and had no

15

reason to know, that the Products were defective and not merchantable.

100. Defendant knew or should have known that the Products were defective and not merchantable.

101. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members suffered damages, including but not limited to overpayment, diminished value, loss of use, and other economic losses in an amount to be proven at trial.

## COUNT IV
## UNJUST ENRICHMENT

102. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

103. Plaintiff brings this count individually and on behalf of the Class.

104. Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

105. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the defect.

106. Defendant's retention of the revenue it received from Plaintiff and the Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff and the Class members, as they would not have purchased the Products, or would not have paid a premium price, if they knew the Products were defective.

107. Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class, entitles Plaintiff, and the Class members, to restitution of the money they paid to Defendant for the Products.

## REQUEST FOR RELIEF

Plaintiff requests a judgment against Defendant as follows:

a. An order certifying the Class and appointing Plaintiff the Class representative;

16

b.      An order certifying the undersigned counsel as the Class Counsel;

c.      An order requiring Defendant, at its own cost, to notify all members of the Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.      Judgment against Defendant in an amount to be determined at trial;

e.      Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f.      Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of the claims in this action.

Respectfully Submitted,

**Asjad Ali**, individually and on behalf of all others similarly situated.

CROSNER LEGAL, P.C.

By:  */s/ Adam C. York*
Adam C. York (6294143)
adam@crosnerlegal.com
1016 West Jackson Blvd. Ste. 197
Chicago, Illinois 60607
Tel: (866) 276-7637
Fax: (310) 510-6429

Craig W. Straub (*Pro hac vice* forthcoming)
craig@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff*

17